HORTON *v.* JONES.

In Banc. Feb. 13, 1950.

No. 37309 (44 So. (2d) 397)

**Windham & Cunningham,** for appellant,

**Sam E. Lumpkin** and **Ramon L. Burgess,** for appellee, cited:

**Lee, J.**

Suit was instituted in the lower court by Mary Rogers Jones to recover from Luke Horton, trading and doing business as 622 Cab Company, the sum of $440.00. From a judgment for that amount, Horton appeals.

The declaration charged that the appellee engaged a cab of the appellant, driven by Herbert Woodall, as agent of appellant, to take her from the downtown area to her home in Tupelo; that when the cab stopped, she got out, but the driver did not give sufficient time to get her billfold or pocketbook; that he slammed the door, and hurried off with her pocketbook which contained the amount sued for. A plea of the general issue was filed.

The proof conformed to the allegations of the declaration. When appellee arrived at her destination, the driver upbraided her that it took as long for her to get in as to build a car, and ordered her to get out. She told him that she was crippled. She left the cab, taking some packages, but did not have time to get the pocketbook off of the seat. The driver slammed the door and hurried off, with appellee screaming over her loss. As the cab driver turned the corner of the block, he shook the pocketbook at her. According to her evidence, it then contained $440.00. She immediately called the cab office, reported the incident, and let them know that Woodall had left her. The matter was reported to the police, and a radio message over the local station was given out. Following the incident, Woodall took a fare to Clarksdale. On his return about two o'clock the next morning he called Horton, and then the police, and surrendered to them. He delivered to Horton the money received from the fare to Clarksdale. Appellant admitted that Woodall was

working in his employ at the time as a cabdriver. In his brief, he also concedes that the proof as to the theft is not contradicted.

At the close of the evidence for the plaintiff in the court below, defendant made a motion to exclude the evidence, and direct a verdict for the defendant, on the ground that Woodall's act was outside the scope of his employment, and that there was no evidence to show that defendant condoned, affirmed or acquiesced therein. This motion was overruled. At the close of all the evidence, defendant renewed his motion, and the same was again overruled. Plaintiff also asked for a directed verdict; but this motion was overruled, and the case was submitted to the jury.

Appellant complains of error in overruling his motions for directed verdicts, and also in the giving of two instructions for the plaintiff.

As regards these instructions, we think, when they are considered together with the instructions given for the defendant, as they must be, a correct interpretation and announcement of the law was stated. However, in view of the conclusion which we have reached, it will not be necessary to make a detailed comment on the instructions.

██ ██ Scope of employment is a relative term, difficult of exact definition. It comprehends consideration of the surrounding facts and circumstances. Attention must be given to the character of the employment and the nature of the wrongful deed—the time and place where committed. It must be borne in mind that liability is not limited to the acts of the employee which promote the objects of the employment. Sometimes the business of the master is combined with the business or pleasure of the employee.

██ ██ Where the servant, in committing the wrongful deed acts about the master's business for which he is employed, the master is liable, although in doing the act, the servant stepped beyond his authority. Walters v.

Stonewall Cotton Mills, 136 Miss. 361, 101 So. 495. Even though the conduct of the servant was unauthorized, it is still in the scope of his employment, if it is of the same general nature of, or incidental to, the conduct authorized. Loper v. Yazoo & M. V. R. Co., 166 Miss. 79, 145 So. 743. In order for the master to escape liability, it must be shown that the servant, when the wrongful act was committed, had abandoned his employment and gone about some purpose of his own not incident to his employment. Barmore v. Vicksburg, S. & P. R. Co., 85 Miss. 426, 38 So. 210, 70 L.R.A. 627, 3 Ann. Cas. 594. If time and logical sequence do not separate the injurious act from the business of the master sufficiently to establish a separate and independent transaction, the master is not relieved because the servant stepped outside his authority. Interstate Co. v. McDaniel, 178 Miss. 276, 173 So. 165. Although a servant is not employed to be negligent, this does not mean that the wrongful act is outside the scope of employment—it may be an incident to the ultimate purpose which constitutes his job. Sears Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So. (2d) 250.

The liability of an employer for the intentional or wilful acts of his employee, or those which amount to a crime, when such acts are done in the prosecution of the employer's business and within the scope of the employee's authority, seems definite and certain. 35 Am. Jur., par. 564, p. 998. This rule is further amplified in par. 567, p. 1001 thereof as follows: "It is a well settled rule that the mere circumstance that the tortious act of an employee amounts to a crime does not preclude a person to whom injury has been occasioned by its commission from maintaining a civil action against his employer for injuries resulting from such criminal act. The test of liability is the same as in cases where a noncriminal act is involved; the act must have been one authorized by the employer prior to its commission, ratified after its commission, *or committed within the scope of the em-*

*ployment.* The rule is not varied by the fact that the employee has been punished criminally for the offense.'' See also 57 C.J.S., Master and Servant, Section 573, page 322. (Emphasis supplied.)

It must be remembered that the cab was Horton's. The driver was Horton's. The cab was being driven for Horton. The appellee was a passenger. It was necessary to stop the cab to let the passenger out. The passenger was entitled to sufficient time to get out. Insufficient time was given for this purpose. The driver slammed the door and sped away. The money·was in the car at the time, and lost by the passenger. The haste of the driver in trying to get the passenger out of the cab quickly might evidence careful attention to his employer's business—that he could get another fare and make money for his employer. The driver actually left the scene, made another trip for a fare of $33.00, and paid this money over to Horton. Clearly the law should protect the victim in such a case.

The disposition of the question found here was forecast in White's Lumber & Supply Co. v. Collins, 186 Miss. 659, 674, 191 So. 105, 107, 192 So. 312, where it was said: ''The employer is prohibited by law to employ a person to commit at any time an assault and battery; yet if in the furtherance of the business of the master and as an incident to the performance of the duties of the character or kind which he was employed to perform, the servant commits an assault and battery, the employer is liable.'' (Citing authorities.)

By the same process of reason we would say: Appellant was prohibited by law to employ a person to commit at any time a larceny; yet, if while about Horton's business, and as an incident to the performance of the duties of the kind and character which he was employed to perform, Woodall committed a larceny, Horton is liable.

Inasmuch as this cause was submitted to the jury, and the verdict was for the appellee, the right result was

reached. ■ ■ The facts were undisputed, and they conclusively established that the wrongful act of Woodall was committed while he was acting about the business of Horton, and within the scope of his duties to Horton. ■ ■ Consequently, the appellee's requested peremptory instruction should have been given. Thus, it is unnecessary to devote attention to the instructions complained about—their correctness or incorrectness becomes immaterial.

Affirmed.