# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00833-COA

**ROBERT C. HILL**                                                                                      **APPELLANT**

**v.**

**CENTRAL SUNBELT FEDERAL CREDIT**                                                  **APPELLEE**
**UNION**

DATE OF JUDGMENT:                    01/21/2021
TRIAL JUDGE:                         HON. ROBERT THOMAS BAILEY
COURT FROM WHICH APPEALED:           WAYNE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              PERCY W. WATSON
ATTORNEY FOR APPELLEE:               DOUGLAS BAGWELL
NATURE OF THE CASE:                  CIVIL - PERSONAL INJURY
DISPOSITION:                         AFFIRMED - 10/18/2022
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On January 21, 2021, the Circuit Court of Wayne County entered an order granting

Central Sunbelt Federal Credit Union's motion for summary judgment and dismissed Robert

Hill's complaint. Hill's complaint was filed as a result of injuries he sustained after falling

on an outdoor covered porch area in front of the credit union's entrance. Aggrieved by the

circuit court's ruling, Hill appealed.

## FACTS AND PROCEDURAL HISTORY

¶2.     On June 23, 2017, Robert Hill went to Central Sunbelt Federal Credit Union in

Waynesboro, Mississippi, to take care of some banking business. At the time he arrived at

the credit union, it was raining. This undisputed fact is also corroborated by surveillance

video from the porch area outside the credit union. The credit union's surveillance video also shows that while the concrete was wet, there were no puddles or any accumulated rain present on the outdoor covered porch area leading toward the entrance doors. The surveillance video shows Hill approaching the front of the credit union. As Hill crossed the threshold of the covered porch area, he slipped and fell before reaching the entrance doors. Hill remained on the ground after his fall until he left the premises by ambulance. As a result of the fall, Hill suffered a fractured tibia and an injured knee.

¶3. On June 21, 2018, Hill filed a complaint against the credit union claiming that it was negligent and breached its duty to the public to exercise reasonable care in maintaining its premises in a reasonably safe condition for customers entering and leaving the credit union. On October 18, 2018, the credit union filed an answer to Hill's complaint denying any liability. On April 27, 2020, after discovery was complete, the credit union filed a motion for summary judgment and a memorandum brief in support of the requested relief. On June 18, 2020, Hill filed his response in opposition to the motion for summary judgment. The credit union's motion for summary judgment was heard on October 20, 2020, and the court entered an order granting the motion on January 21, 2021. The circuit court found that "[Hill] failed to put forth specific evidence of knowledge of an alleged rainfall accumulation hazard. Furthermore, a business is not required to remove rain water from its entry way as the rain water falls." On February 1, 2021, Hill filed a combined motion for reconsideration and a memorandum of authorities in support of his motion. The trial court entered an order denying Hill's motion to reconsider on June 28, 2021, and Hill filed his notice of appeal on

2

July 16, 2021.

## STANDARD OF REVIEW

¶4.     In *McKinley v. Lamar Bank*, 919 So. 2d 918 (Miss. 2005), the supreme court

described the appellate review standard when dealing with rulings on summary judgment

motions:

> We thus apply a de novo standard of review concerning the propriety of a trial court's grant or denial of summary judgment. *Montgomery v. Woolbright*, 904 So. 2d 1027, 1029 (Miss. 2004); *Brown ex rel. Ford v. J.J. Ferguson Sand & Gravel Co.*, 858 So. 2d 129, 130 (Miss. 2003); *Armistead v. Minor*, 815 So. 2d 1189, 1191-92 (Miss. 2002); *Richardson v. Methodist Hosp.*, 807 So. 2d 1244, 1246 (Miss. 2002). We recently discussed our responsibilities in reviewing cases involving summary judgments:
>
>> We apply a de novo standard of review of a trial court's grant or denial of a motion for summary judgment. *Satchfield v. R.R. Morrison & Son, Inc.*, 872 So. 2d 661, 663 (Miss. 2004); *McMillan v. Rodriguez*, 823 So. 2d 1173, 1176-77 (Miss. 2002); *Lewallen v. Slawson*, 822 So. 2d 236, 237-38 (Miss. 2002); *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001). . . . **Accordingly, just like the trial court, this Court looks at all evidentiary matters in the record, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.** *Id*. at 70. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. *Id*. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. *Id*. When a motion for summary judgment is made and supported as provided in Miss. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of the pleadings, but instead the response must set forth specific facts showing that there is a genuine issue for trial. *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000). If any triable issues of fact exist, the trial court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. *Id*. at 304.

*McKinley*, 919 So. 2d at 925 (¶13) (emphasis added) (quoting *Harrison v. Chandler-*

3

*Sampson Ins. Inc.* 891 So. 2d 224, 228 (¶11) (Miss. 2005)).

## ANALYSIS

¶5.     Hill argues on appeal that the circuit court committed reversible error by granting the credit union's request for summary judgment because there were disputed issues of fact regarding liability. Hill claims that the issue of the openness and obviousness of the alleged dangerous condition was a question for the jury. Further, Hill claims that whether the credit union breached its duty to keep its premises in a reasonably safe condition or reasonably inspect its premises was also a question for a jury. Finally, Hill claims that whether the warning sign that was leaning against the exterior of the credit union building provided adequate warning of the condition of the entryway was a question that a jury should consider.

¶6.     Hill's burden of proof for his slip-and-fall premises liability claim is set forth in *Moore v. Rouse's Enterprises LLC*, 219 So. 3d 599, 602 (¶7) (Miss. Ct. App. 2017):

> "A landowner owes a business invitee a duty of reasonable care for the invitee's safety." *Hudson v. Courtesy Motors Inc.*, 794 So. 2d 999, 1003 (¶9) (Miss. 2001). "The duty owed by a premises owner to a business invitee is the 'duty to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition.'" *McSwain v. Sys. Energy Res. Inc.*, 97 So. 3d 102, 107 (¶11) (Miss. Ct. App. 2012) (quoting *Jones v. James Reeves Contractors Inc.*, 701 So. 2d 774, 782 (Miss. 1997)). As this Court noted in *Grammar v. Dollar*, 911 So. 2d 619, 624 (¶12) (Miss. Ct. App. 2005):
>
>> In order for an invitee to recover in a slip-and-fall case, the invitee must (1) show that some negligent act of the defendant caused his injury; or (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

4

(Citing *Anderson v.* [*B.H. Acquisition Inc.*], 771 So. 2d [914,] 918 (¶8) [(Miss. 2000)]).

Concerning the three possible theories of liability in a premises liability claim, in *Thomas v. Shed 53 LLC*, 331 So. 3d 66, 71 (¶17) (Miss. Ct. App. 2021), this Court reasoned:

> "[R]egardless of the invitee's precise theory of premises liability, proof that her injury was caused by a 'dangerous condition' is an essential element of her claim." *Jones* [*v. Wal-Mart Stores E. LP*], 187 So. 3d [1100,] 1104 (¶12) [(Miss. Ct. App. 2016)]. "[A] property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists." *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97-98 (¶10) (Miss. Ct. App. 2010). Moreover, a business "is not required to keep the premises absolutely safe, or in such a condition that no accident could possibly happen to a customer." *Stanley v. Morgan & Lindsey Inc.*, 203 So. 2d 473, 476 (Miss. 1967).

And, finally, in *Venture Inc. v. Harris*, 307 So. 3d 427, 433 (¶¶24-25) (Miss. 2020), the Court explained:

> "The invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." *Fulton v. Robinson Indus. Inc.*, 664 So. 2d 170, 175 (Miss. 1995) (citing *Tate v. S. Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995)). "The owner of a business is not . . . liable for injuries caused by conditions which are not dangerous . . . ." *McGovern v. Scarborough*, 566 So. 2d 1225, 1227 (Miss. 1990) (quoting *Stanley v. Morgan & Lindsey Inc.*, 203 So. 2d 473, 476 (Miss. 1967)).
>
> This Court has distinguished cases that "involved dangers which are usual and which customers normally expect to encounter on the business premises, such as thresholds, curbs and steps" from those cases involving a "physical defect on the defendant's premises condition which may be found to be unusual and unreasonably dangerous . . . ." *Tate*, 650 So. 2d at 1351. **Obviously, the plaintiff must present evidence to prove the existence of a dangerous condition**. *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97-98 (Miss. Ct. App. 2010).

(Emphasis added).

¶7.    Rain falling on an outdoor porch is a natural condition that a person would normally

expect to encounter on premises such as the credit union's entranceway. While we agree with Hill that the question of whether a "dangerous condition" is "open and obvious" is a question for a jury, as shown above, Hill must first produce evidence that a "dangerous condition" existed on the premises.[1] Further, our supreme court has held that res ipsa loquitur (i.e., "the thing speaks for itself") does not apply in slip-and-fall cases. *Douglas v. Great Atl. & Pac. Tea Co.*, 405 So. 2d 107, 111 (Miss. 1981). Therefore, if there is no evidence that there was a "physical defect" on the credit union's premises that was "unusual and unreasonably dangerous," our analysis stops there.

¶8. Hill stated in his deposition that on the day of the incident, he "just walked normally because it wasn't raining that hard. It was just sprinkling like. It wasn't no downpour like heavy rain. It was modest little sprinkles I would say." Hill further testified that there were no puddles in the parking lot of the credit union. He stated that there was "just wetness. You could see the wetness on the ground." While Hill stated that "the wet surface and the smoothness of the concrete area there" contributed to his fall, he also stated that "I'm not

---

[1] In affirming the trial court's grant of summary judgment, the court found in *Jones v. Wal-Mart Stores East LP*, 187 So. 3d 1100, 1106 (¶18) (Miss. Ct. App. 2016):

> Jones also relies heavily on our Supreme Court's decision in *Mayfield* [*v. The Hairbender*], 903 So. 2d 733 [(Miss. 2005)], arguing that it precludes summary judgment on her negligence claim. However, *Mayfield* held only that an open and obvious danger is not an absolute defense in a premises liability case in which the plaintiff alleges that the defendant was negligent in failing to repair a dangerous condition. See *id*. at 737 (¶¶16-19). Rather, the issue should be considered by the jury under a comparative negligence standard. *See id*. at (¶19). The *Mayfield* opinion did not address the question whether the defect at issue in that case—broken pavement that "jutted up" over steps leading to the business, *see id*. at 734 (¶3)—constituted a dangerous condition. Accordingly, *Mayfield* is not on point in this case.

saying it's all, but it had something to do with it." A credit union employee, Cylina Barger, stated in her deposition that she had no knowledge of any other similar incidents either before or after Hill's fall. She also stated that there was no standing water on the porch. The incident report completed by Barger indicated that there were no witnesses. While there was another gentleman under the covered outdoor porch using the ATM at the time that Hill fell, he did not witness Hill fall.

¶9. The only other direct evidence of the incident can be gleaned from the credit union's surveillance video. As already discussed, the surveillance video corroborated both Hill's and Barger's statements that it was actively raining at the time of the incident, and there were no visible puddles or accumulations of water on the outdoor porch area in front of the credit union entrance. None of the other patrons who can be seen on the video that either entered or exited the credit union or traversed the porch to access the ATM seemed to have any problems with the alleged slickness of the concrete. No unusual conditions are visible on the porch area that would seem to have impeded Hill's path from the sidewalk, to the porch, and to the front door of the credit union.

¶10. At the summary judgment stage, the evidence should be viewed in the light most favorable to the non-moving party. However, in *Smith v. City of Southaven*, 308 So. 3d 456, 465 (¶35) (Miss. Ct. App. 2020), this Court stated:

> As the Mississippi Supreme Court explained in *Duckworth*, "Scott thus informs our courts that where the record contains a videotape of disputed facts capturing the events in question, the courts should view the story as depicted by the videotape, when one party's version is blatantly contradicted, for the purpose of ruling on a summary judgment motion." *Duckworth* [*v. Warren*], 10 So. 3d [433,] 438 (¶12) [(Miss. 2009)].

The video in this case does not show puddles or accumulations of water on the outdoor covered porch area of the credit union. However, the video does show, and it is undisputed by the parties' testimony, that it was actively raining at the time of the incident in question, and the likelihood that rain could blow in under the covered porch was significant.

¶11.    In *Wallace v. J.C. Penney Co. Inc.*, 236 Miss. 367, 109 So. 2d 876, 880 (1959), the Mississippi Supreme Court addressed this exact premise. The court reasoned that:

> Certainly the company was not required to keep a large force of moppers in this open entranceway to its store during the progress of the rain, in order to mop up the water and dirt as fast as it was tracked or blown in. . . . The wet and dirty condition of the floor of the foyer was caused by the continuing rains and by public use of the entrance-way. It was not caused by appellee, and the evidence does not indicate any failure by appellee in its duty to maintain its premises in a reasonably safe condition, under the circumstances prevailing at the time.

Just as in *Wallace*, in the case at hand, the credit union was not required to have a "force of moppers" standing under the covered porch mopping up water "as fast as it was tracked or blown in." Given the amount of traffic in and out of the credit union without any other incident, and the fact that it was actively raining at the time that Hill fell, the surveillance video evidence suggests that no unreasonably dangerous condition existed at the time of Hill's fall.

¶12.    Finally, while Hill claims that the credit union could have taken precautionary measures such as a warning sign, mat, or a non-slip coating on the concrete floor, he offered no expert testimony at the summary judgment hearing in furtherance of his claims. In a similar case, *Walker v. Cellular South Inc.*, 309 So. 3d 16, 25 (¶¶32-34) (Miss. Ct. App. 2020), Walker sought to prove a dangerous condition by offering expert testimony as well

8

as his own testimony in furtherance of his claims. In that case, this Court held that the trial court properly excluded the expert's testimony, and therefore Walker was left with no evidence of a dangerous condition. This Court held that "Walker's premises liability theories failed because he has no proof of a dangerous condition at the C Spire store." Notably, the record in that case was also "devoid of any prior similar incidents." In the case at hand, there is no expert testimony, and we are left with nothing more than Hill's own statement to show that the slippery concrete was an "unusual and unreasonably dangerous condition" that caused his fall. Given the record and evidence presented to the trial court, Hill's evidence is insufficient to survive the credit union's motion for summary judgment.

## CONCLUSION

¶13. After reviewing the record, we find that Hill failed to demonstrate any genuine issue of material fact for trial, and, therefore, we affirm the circuit court's order granting the credit union's motion for summary judgment.

¶14. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE AND LAWRENCE, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**